# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) MURIEL COLLEEN CLOTHIER, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> (1) HEALTH CARE SERVICE ) <br> CORPORATION, a Foreign Mutual Legal ) <br> Reserve Company, d/b/a BLUE CROSS ) <br> AND BLUE SHIELD OF OKLAHOMA, ) <br> Defendant. ) | Case No. CIV-21-884-R |

**First Amended Complaint**

Plaintiff, Muriel Colleen Clothier ("Plaintiff"), for her cause of action against Defendants, Blue Cross and Blue Shield of Oklahoma, and Health Care Service Corporation (collectively, "BCBS"), alleges and states as follows:

**Jurisdiction and Venue**

1. Plaintiff is a resident of Johnston County, Oklahoma.

2. Defendant Blue Cross and Blue Shield of Oklahoma operates under the common name Blue Cross Blue Shield of Oklahoma in the State of Oklahoma as an unincorporated division of Health Care Service Corporation, a mutual legal reserve company.

3. The Defendant, Health Care Service Corporation, dba BlueCross BlueShield of Oklahoma is a foreign for-profit business incorporated in the State of Illinois. BCBS is authorized to transact business within the State of Oklahoma and may be served with process through its service agent, Glen Mulready, Oklahoma Insurance Commissioner, 400 NE 50th Street, Oklahoma City, Oklahoma, 73105.

4. At all times material hereto, Plaintiff was insured under a Blue Cross Blue Shield of Oklahoma health insurance policy. The subject insurance policy was sold, issued, delivered and renewed in Oklahoma.

5. Jurisdiction and venue are proper in this Court.

6. The facts and causes of action against BCBS arose out of the same transaction or occurrence: Plaintiff seeking treatment for tumors in her right lung.

**Facts**

7. At all times relevant to this matter, Plaintiff was insured under a policy of health insurance issued by BCBS.

8. The applicable policy is identified as a Blue Preferred Silver PPO$^{SM}$ 201 ("Health Plan") and has an ID number of YUQ947064780 and group number of OS1800.

9. The health plan was issued by BCBS through the Health Insurance Marketplace.

10. The Health Plan is not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), and therefore, Defendants are not exempt from any state law causes of action alleged by Plaintiff.

11. Plaintiff was initially diagnosed with colon cancer in 2008. She had a colon resection in November 2008 and a course of chemotherapy.

12. In November 2018, she planned spine surgery and a chest x-ray showed an abnormal mass in her left lung.

13. In December 2018, a colonoscopy showed a cecal polyp.

14. In December 2018, she had a chest CT that showed a lesion in her left upper lung, as well as hilar/suprahilar lesions compatible with malignancy/metastasis.

2

15. Also in December 2018, she had a femoral neck fracture indicative of metastatic disease.

16. A biopsy on December 20, 2018, confirmed the lung lesions were metastatic adenocarcinoma consistent with primary colon cancer.

17. On December 22, 2018, she underwent a right femoral head resection, confirming metastatic adenocarcinoma involving bone consistent with primary colon cancer.

18. In February 2019, she underwent additional chemotherapy.

19. On November 19, 2019, she underwent a thoracotomy, left upper lobe (lung) segmentectomy, and left lower lobe (lung) wedge resection.

20. On April 2, 2020, BCBS denied a request for Plaintiff's breast reduction surgery as not meeting the "med policy criteria" and was not considered medically necessary under Medical Policy SUR716.012, Reduction Mammaplasty.

21. On June 3, 2020, Plaintiff underwent another CT that showed nodules in the right lower lung had increased in size and were likely metastatic.

22. On June 30, 2020, Plaintiff underwent brain surgery and a resection of a lesion in her lower left cerebellum. Physicians were unable to remove a second, deeper lesion. The resection was followed by radiation treatments. Pathology showed metastatic adenocarcinoma from primary colon cancer.

23. On September 8, 2020, a CT showed the nodules in the right lung had grown and were likely metastatic.

24. In October 2020, Plaintiff started physical therapy due to her back pain which she attributed to her prior request for a breast reduction.

25. On November 10, 2020, a CT showed continued growth in the right lung nodules.

3

26. The procedures and health care related treatment in Paragraphs 10-24 of this Amended Complaint were covered by BCBS, excluding the April 2, 2020 requested breast reduction.

27. On March 2, 2021, a biopsy confirmed the right lung nodules were metastatic adenocarcinoma consistent with primary colon cancer.

28. A note in Plaintiff's medical records from Dr. Tam on March 5, 2021, stated that the reasoning for using ablation is that "Patient is not a surgical candidate. Patient has previously undergone surgical resection of the lung. Multidisciplinary discussion with medical oncology has concluded that ablation therapy is the optimal treatment to address the lesions as well as sparing as much parenchyma as possible." (*MD Anderson Record, March 5, 2021,* **Exhibit 1**- CLOTHIER 000053- *ECF Doc. 1-1, p.20*)

29. On March 10, 2021, Dr. Alda Tam with MD Anderson Cancer Center in consultation with Mrs. Clothier recommended microwave ablation of the two larger right lung nodules. (*MD Anderson Record, March 10, 2021*, **Exhibit 1**- CLOTHIER 000040- *ECF Doc. 1-1, p.19*)

30. The ablation of the two larger right lung nodules was scheduled for April 2, 2021.

31. On March 12, 2021, BCBS denied coverage for the ablation procedure because "[r]equested service(s) is/are experimental or investigational." Their "clinical rationale" was that under HCSC Oklahoma medical policy SUR701.038:

Microwave ablation of metastatic lung tumors may be considered medically necessary under the following conditions:
- The tumor is unresectable due to location of lesion and/or comorbid conditions;
- A single tumor of (less than or equal to) 3 cm.

Microwave ablation of more than a single metastatic tumor in the lung is considered experimental, investigational, and/or unproven. Does not meet medical policy as medically necessary and proven to improve health care outcomes based on the peer reviewed medical literature.

4

(*BCBS Letter, March 12, 2021,* **Exhibit 2**- *ECF Doc. 1-1, p.21-23*)

32. An internal appeal was filed with BCBS, which was denied on March 29, 2021. The denial stated "You [sic] records state that [sic] have more than one lung tumor. Therefore, treatment is experimental. There is not enough research to show that this treatment will cure your condition in the long term. Coverage of this treatment cannot be approved." (*BCBS Letter, March 29, 2021,* **Exhibit 3**- *ECF Doc. 1-1, p.24-31*)

33. Publicly available BCBS documents show that Microwave Tumor Ablation for pulmonary tumors is not considered Experimental, Investigational and/or of unproven benefit. The publicly available information concerning BCBS's stance on Microwave Tumor Ablation is not specifically highlighted as Experimental, Investigational, Unproven. [1]

34. On June 9, 2021 while awaiting her Microwave Tumor Ablation cancer treatment approval, BCBS approved Plaintiff's previously requested Breast Reduction coverage request.

35. Publicly available BCBS documentation shows that Breast Reduction under SUR716.012 Medical Policy "may require prior authorization". Id. at fn 1.

36. Plaintiff will become Medicare eligible on September 17, 2021.

37. After the March 29, 2021 denial, MD Anderson submitted a request for an "Independent External Review" ("IER") on behalf of Plaintiff. The IER letter upheld the denial of coverage. (*IER Letter, June 28, 2021,* **Exhibit 4**- *ECF Doc. 1-1, p.32-35*)

---

[1] https://www.bcbsok.com/provider/pdf/2021commercial-procedurecodelist-fi-p-mn-ncs.pdf (last accessed July 30, 2021)

38. Plaintiff has exhausted all appeals and reviews, internal and external, of her claim under the Health Plan.

39. As a direct result of BCBS's decision and subsequent actions, Plaintiff has sustained damages.

**First Cause of Action – Breach of Contract**

40. Plaintiff adopts and incorporates by reference paragraphs 1-39 of her Amended Complaint.

41. At all times, Plaintiff complied with the terms of the Health Plan required for coverage under the Terms and Conditions of the Health Plan.

42. Plaintiff properly submitted a claim for benefits under the Health Plan.

43. BCBS owed Plaintiff specific obligations under the terms of the Health Plan.

44. BCBS is obligated to pay for medical treatment, operations, and other services that are medically necessary and not experimental or investigational as specifically defined and covered under the terms of the Health Plan.

45. The treatment recommended for Plaintiff's right lung cancer nodules is medically necessary and is not experimental or investigational.

46. Thus, BCBS was obligated under the Health Plan to pay for, subject to the terms of coverage amounts, the treatment for Plaintiff's cancer.

47. BCBS was provided with specific information by Plaintiff's doctors and medical providers establishing that the recommended treatment is effective for the cancer Plaintiff is fighting.

6

48. BCBS's own Medical Policies-Microwave Tumor Ablation-SUR701.038 contains references and peer reviewed literature which supports the approval of Plaintiff's requested treatment. (*BCBS Policy SUR701.038,* **Exhibit 5-** *ECF Doc. 1-1, p.36-61*)

49. BCBS failed to cover the treatment recommended by Plaintiff's doctors, despite multiple appeals and the submission of evidence and information establishing that the required treatment is the standard of care for Plaintiff's condition.

50. BCBS' letter dated March 12, 2021, does not specifically identify which policy provision(s) in the Health Plan Contract they are relying upon for denying coverage. (*BCBS Letter, March 12, 2021,* **Exhibit 2**.) The March 12th letter specifically states they are denying coverage because the "*Requested service(s) is/are experimental or investigational*."

51. BCBS' letter dated March 29, 2021 denying the Appeal of their March 12th decision does not specifically identify which specific policy provision(s) in the Health Plan Contract they are relying upon for denying coverage. (*BCBS Letter, March 29, 2021,* **Exhibit 3**.) The March 29th letter specifically states they are denying coverage because "You[r] records state that have more than one lung tumor. Therefore, *treatment is experimental*. There is not enough research to show that this treatment will cure your condition in the long term. Coverage of this treatment cannot be approved."

52. The "Independent External Review" ("IER") letter answered an entirely different question than what BCBS relied upon in denying Plaintiff's claim for coverage in the March 12th and 29th letters. The IER letter answered the following question:

> **Questions:**
> 1. Do the medical records establish that the services performed were medically necessary according to generally accepted standards of care?

7

> The medical records do not establish that the services performed were medically necessary according to generally accepted standards of care.
>
> (*IER Letter, June 28, 2021,* **Exhibit 4.**)

The discrepancies in the IER letter are as follows:

   a) Medical services were requested, not performed as incorrectly stated in the letter;

   b) BCBS denied Plaintiff's claim for coverage because they determined the procedure to be Experimental or Investigational, whereas the IER letter answers whether the requested procedure was medically necessary;

   c) Plaintiff's Health Plan, the Medical Policies-Microwave Tumor Ablation-SUR701.038, and BCBS's two denial letters do not mention or define "standards of care". The IER letter applies a "generally accepted standards of care" rule or criteria, which is not mentioned or defined in Plaintiff's Health Plan contract or the Microwave Tumor Ablation policy, in making their determination to uphold the denial of care.

53. BCBS has also improperly caused delays in the recommended medical treatment for Plaintiff by delaying claims decisions or arbitrarily denying claims and forcing Plaintiff to initiate appeals.

54. BCBS continues to wrongfully deny Plaintiff's claim based on the incorrect and outdated position that the recommended treatment is experimental and has not been shown to be effective for Plaintiff's condition.

55. Plaintiff's Health Plan provides the following relevant language in regard to Experimental procedures:

> **What Is Not Covered**
> Except as otherwise specifically stated in the Contract, we do not provide Benefits for services, supplies or charges:
> - Which are not prescribed by or performed by or upon the direction of a Physician or other Provider.

8

- Which the Plan determines are Experimental, Investigational and/or Unproven in nature.

The Health Plan contract defines Experimental, Investigation and/or Unproven in regard to medical procedures in the following manner:

**EXPERIMENTAL/INVESTIGATIONAL/UNPROVEN**

A drug, device, biological product, or medical treatment or procedure is Experimental, Investigational, or Unproven if **the Plan determines** that:

- The drug, device, biological product, or medical treatment or procedure cannot be lawfully marketed without approval of the appropriate governmental or regulatory agency and approval for marketing has not been given at the time the drug, device, biological product, or medical treatment or procedure is furnished; or

- The drug, device, biological product, or medical treatment or procedure is the subject of ongoing phase I, II, or III clinical trials or under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with a standard means of treatment or diagnosis; or

- The prevailing opinion among peer reviewed medical and scientific literature regarding the drug, device, biological product, or medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis.

Approval by a governmental or regulatory agency will be taken into consideration by the Plan in assessing Experimental/Investigational/Unproven status of a drug, device, biological product, or medical treatment or procedure but will not be determinative.

(*BCBS Outline of Coverage,* **Exhibit 6**- *ECF Doc. 1-1, p.62-64*)

56. Plaintiff's Health Plan language concerning Experimental, Investigational and/or Unproven medical treatment is technically ambiguous and capable of more than one reasonable interpretation.

57. The Health Plan contract does not specifically provide that ablation of lung nodules or tumors is considered experimental.

9

58. The Medical Policies-Microwave Tumor Ablation-SUR701.038 relied upon by BCBS in denying coverage was not attached to and was not specifically identified, adopted, or incorporated specifically as a part of Plaintiff's Health Plan contract. (*BCBS Policy SUR701.038,* **Exhibit 5.**)

59. The Microwave Tumor Ablation-Medical Policies relied upon by BCBS in denying coverage states that Microwave Ablation of a single tumor less than or equal to 3cm is not experimental. (*BCBS Letter, March 12, 2021,* **Exhibit 2**.) Plaintiff's two tumors were less than ~6mm. (*MD Anderson Record, March 10, 2021*, **Exhibit 1**- CLOTHIER 000040).

60. The Medical Policies-Microwave Tumor Ablation provides that ablation may be considered medically necessary if the insured has "comorbid conditions". The words comorbid conditions are not defined in the Health Plan nor the Medical Policies relied upon by BCBS.

61. Plaintiff had a reasonable expectation of coverage under her Health Plan in that she relied upon her medical doctors to make the best and sound decisions for her care and that her Health Plan would provide coverage according to the Health Plan policy language.

62. Plaintiff had a reasonable expectation of coverage under her Health Plan in that she relied upon her Health Plan to provide coverage according to the policy language which created a reasonable expectation of coverage for the requested cancer procedures.

63. Plaintiff's Health Plan language concerning Experimental, Investigational and/or Unproven medical treatment is technically ambiguous and capable of more than one reasonable interpretation.

10

64. In the alternative, Plaintiff is entitled to reformation of the insurance contract to provide coverage.

65. The acts and omissions of BCBS in the investigation, evaluation, and decision of Plaintiff's claims were unreasonable, improper, and in violation of the terms of the Health Plan.

66. BCBS breached the contract with Plaintiff by failing to pay for covered claims, forcing Plaintiff to initiate multiple appeals without providing a reasonable review and consideration of information and evidence submitted in support of each appeal, and otherwise failing to comply with its obligations under the terms of the health plan.

67. Plaintiff has sustained actual damages as a direct and proximate result of BCBS's breach of contract in an amount exceeding $75,000.00.

### Second Cause of Action-Bad Faith

68. Plaintiff adopts and incorporates by reference paragraphs 1-67 of her Amended Complaint.

69. BCBS, as an insurer, owes Plaintiff, as an insured, a duty to deal fairly and act in good faith under Oklahoma law. Plaintiff is covered under the terms of the Health Plan.

70. The acts and omissions of BCBS in the investigation, evaluation, delay and decision on Plaintiff's claims were unreasonable, improper, contrary to established medical standards, and constitute bad faith for which extra-contractual damages are claimed.

71. BCBS breached the implied covenant of good faith and fair dealing in the handling of Plaintiffs' claims, and as a matter of routine claim practice in handling similar claims, by:

    a. failing and refusing payment and other policy benefits for Plaintiff at a time when BCBS knew that she was entitled to those benefits;

11

b. failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusals and following the receipt of additional information;

c. withholding payment of the benefits on behalf of Plaintiff knowing that her claims for those benefits were valid;

d. refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e. refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f. refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h. forcing Plaintiff to initiate multiple appeals without providing reasonable and adequate consideration of the information submitted by or on Plaintiff's behalf as part of said appeals;

i. improperly and arbitrarily denying coverage for medical treatments;

j. failing to properly evaluate any investigation that was performed;

k. knowingly construing the policy wording to restrict coverage in a manner different than BCBS knows this policy is designed, written and marketed to promise much broader coverage under this policy language;

12

l.  refusing to consider coverage for payment objectively in the best interest of their insured rather than the interest of only the insurance company;

m.  intentionally failing and refusing to follow the known law of policy construction, including, but not limited to, resolving any contractual ambiguities in favor of their insured;

n.  imposing conditions and requirements for coverage more restrictive than the requirements of the policy;

o.  unreasonably delaying the payment of policy benefits, including delays and refusals to pay with the specific intent that it interferes with and prevent necessary medical care for Plaintiff in order to reduce the applicable policy benefits that would otherwise be payable for such care; and,

p.  attempting to force a lessened level of care for Plaintiff in order to minimize the policy benefits payable under her policy which resulted in a financial benefit to BCBS;

q.  forcing Plaintiff, pursuant to BCBS's standard claims practice, to retain counsel in order to secure benefits BCBS knew were payable;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

72. BCBS recklessly disregarded its duty to deal fairly and act in good faith, as its conduct was unreasonable and there was a high probability that the denial of Plaintiff's claims would cause serious harm to Plaintiff by delaying, restricting, or otherwise denying necessary medical treatment.

73. As a direct result of BCBS's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered the loss of policy benefits, loss of further appropriate medical care and the policy benefit applicable to such needed care, physical, emotional and developmental injury, emotional distress, embarrassment, frustration, duress, and other consequential damages

74. BCBS's acts and omissions in violation of the implied covenant of good faith and fair dealing were in reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

75. As a direct and proximate result of BCBS's bad faith, Plaintiff has suffered damages in excess of $75,000.00.

76. The conduct of BCBS in the handling of Plaintiff's claim was intentional, willful, wanton, and showed reckless disregard for the rights of Plaintiff for which punitive damages are claimed.

77. BCBS has established a pattern and practice of improper claims handling and arbitrary claims denials such that BCBS recklessly disregards its duty of good faith and fair dealing to insureds in Oklahoma as a matter of common business practice.

78. BCBS's claims handling practices are intentional and with malice toward its insureds.

79. Plaintiff is entitled to an award of punitive damages as determined by a jury pursuant to 23 O.S. §9.1.

**Third Cause of Action – Fraud, Deceit, and Misrepresentation**

14

80. Plaintiff specifically adopts and incorporates by reference paragraphs 1-79 of her Amended Complaint in support for her Fraud, Deceit, and Misrepresentation cause of action even though they are not repeated here for judicial economy.

81. Plaintiff timely and properly submitted claims for insurance benefits to BCBS, as her health insurer. BCBS arbitrarily delayed claims decisions and improperly denied claims that should have been covered under the Health Plan.

82. BCBS told Plaintiff that the treatment recommended by her doctors was experimental or investigational. This position is the basis for BCBS's decision to deny Plaintiff's claim.

83. At the time BCBS disclosed the basis for its claim decision, it was aware that the position was false, not supported by current medical standards, contradicted by evidence of effectiveness in the medical industry supporting the treatment including the peer reviewed studies contained in the Medical Policies-Microwave Tumor Ablation-SUR701.038 and was otherwise misleading as to the treatment of Plaintiff's cancer.

84. Alternatively, BCBS made this disclosure recklessly and without any knowledge of its truth.

85. BCBS made this disclosure with the intention that Plaintiff would rely upon it, and Plaintiff did in fact rely on the representations made by BCBS.

86. Plaintiff is further entitled to reformation of the insurance contract to provide coverage consistent with BCBS's misrepresentations, actions, and inactions.

87. As a direct and proximate result of Plaintiff's reliance on BCBS's misrepresentations and fraudulent statements, Plaintiff has sustained injuries including, but not limited to,

15

monetary losses, stress, bodily injury, delay of medical treatment, mental anguish, and emotional distress. Plaintiff's damages exceed $75,000.00.

88. The conduct of BCBS in the handling of Plaintiff's claim was intentional, willful, wanton, and showed reckless disregard for the rights of Plaintiff for which punitive damages are claimed.

89. BCBS has established a pattern and practice of improper claims handling and arbitrary claims denials such that BCBS recklessly disregards its duty of good faith and fair dealing to insureds in Oklahoma as a matter of common business practice.

90. BCBS's claims handling practices are intentional and with malice toward its insureds.

91. Plaintiff is entitled to an award of punitive damages as determined by a jury pursuant to 23 O.S. §9.1.

**Fourth Cause of Action – Intentional Infliction of Emotional Distress**

92. Plaintiff adopts and incorporates by reference paragraphs 1-91 of her Amended Complaint.

93. BCBS's actions in requiring Plaintiff to initiate multiple appeals without providing reasonable and adequate consideration of the information submitted by or on Plaintiff's behalf as part of said appeals, improperly and arbitrarily denying coverage for medical treatments, ignoring evidence that the recommended treatment has been established as the medically appropriate, supplanting BCBS's own interest ahead of the interests of its insureds, and otherwise implementing and executing a claims decision process that fails to establish and follow adequate standards for claims handling was so extreme and

outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

94. By its actions set forth above, BCBS intentionally or recklessly caused severe emotional distress to Plaintiff beyond that which a reasonable person could be expected to endure.

95. As a direct and proximate result of BCBS's actions, Plaintiff has sustained injuries including, but not limited to, monetary losses, stress, bodily injury, delay of treatment, mental anguish and emotional distress. Plaintiff's damages exceed $75,000.00.

96. The conduct of BCBS in the handling of Plaintiff's claim was intentional, willful, wanton, and showed reckless disregard for the rights of Plaintiff for which punitive damages are claimed.

97. BCBS has established a pattern and practice of improper claims handling and arbitrary claims denials such that BCBS recklessly disregards its duty of good faith and fair dealing to insureds in Oklahoma as a matter of common business practice.

98. BCBS's claims handling practices are intentional and with malice toward its insureds.

99. Plaintiff is entitled to an award of punitive damages as determined by a jury pursuant to 23 O.S. §9.1.

WHEREFORE, premises considered, Plaintiff, Muriel Colleen Clothier, prays for judgment in her favor and against Defendants, Blue Cross and Blue Shield of Oklahoma and Health Care Service Corporation, and requests this Court award Plaintiff damages for Defendants' breach of contract, bad faith, fraud, deceit, misrepresentation, intentional infliction of emotional distress, punitive damages, and/or reformation of the insurance policy to provide coverage, together with attorney's fees, court costs, and such other and further relief as the Court deems just and

17

equitable. Plaintiff's damages exceed $75,000.00 exclusive of attorney's fees and costs in a total amount to be determined by the jury.

                                                Respectfully submitted,

                                                s/ Jason Waddell
                                                Jason Waddell, OBA No. 30761
                                                Jason Waddell, PLLC
                                                222 NW 13th Street
                                                Oklahoma City, OK 73103
                                                Telephone:   (405) 232-5291
                                                Facsimile:    (405) 708-7871
                                                Jason@JasonWaddellLaw.com
                                                **ATTORNEY FOR PLAINTIFF**

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

     I hereby certify that on September 16, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Kevin D. Gordon
Paige A. Masters
Dianna C. Wyrick
Martin J. Bishop
Robert Deegan

                                                s/ Jason Waddell
                                                Jason Waddell