IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SCOTTY J. FULLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22-CV-106-RAW |
| ) | |
| BLUE CROSS BLUE SHIELD OF ) | |
| OKLAHOMA, a division of HEALTHCARE ) | |
| SERVICE CORPORATION, and ) | |
| HEALTH CARE SERVICE CORPORATION, ) | |
| Operating in Oklahoma as Blue Cross and ) | |
| Blue Shield of Oklahoma, ) | |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

Scotty J. Fuller, ("Plaintiff" or "Fuller"), pursuant to the Order entered in this matter on August 8, 2022, files this Amended Complaint against Defendants Blue Cross Blue Shield and Health Care Service Corporation and alleges and states as follows:

1. The Plaintiff Scotty J. Fuller is a resident and citizen of the State of Oklahoma.

2. That the Defendant, Blue Cross Blue Shield of Oklahoma, a division of Healthcare Service Corporation, was, at all times relevant hereto, an Insurance Company incorporated and domiciled in the State of Illinois and was, at all times relevant hereto, licensed to and regularly conducted insurance business in the State of Oklahoma and specifically with regard to the party herein.

3. That the Defendant, Health Care Service Corporation is an Illinois Mutual Legal Reserve Company operating in Oklahoma as Blue Cross and Blue Shield of Oklahoma and is being named separately, out of an abundance of precaution, as to providing the correct name for the insurance carrier in this matter.

4. This Court has original jurisdiction over the claims asserted in this complaint pursuant to 28 U.S.C. §1332(a)(1) because this is a civil action where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

6.      On or about September 21, 2017, Plaintiff Scotty J. Fuller was experiencing a severe headache which was being made worse by exposure to daylight. Mr. Fuller went to his eye doctor in Hugo, Oklahoma, who then referred Mr. Fuller to his primary care physician, Dr. Ted Rowland in Antlers, Oklahoma. Dr. Rowland referred Scotty J. Fuller to Pushmataha Hospital in Antlers, Oklahoma, so that Mr. Fuller could have a computerized axial tomography (CT) scan of his brain.

7.      Plaintiff Scotty J. Fuller underwent the CT scan of his brain at Pushmataha Hospital in Antlers, Oklahoma on September 21, 2017, with said scan being completed at approximately 5:30 in the afternoon. Mr. Fuller then went home to await further instructions from his health care providers.

8.      At approximately midnight on the evening of September 21, 2017, Plaintiff Scotty J. Fuller was notified at his home near Moyers, Oklahoma, that the CT scan revealed a possible problem with his brain and that he needed to come to the hospital in Antlers immediately, which he did.

9.      The report on the CT brain scan performed on Plaintiff Scotty J. Fuller on September 21, 2017, revealed that Mr. Fuller had a 4 centimeter wedge-shaped hypodensity within the right occipital lobe which was concerning for an acute ischemic infarct.

10.     An acute ischemic infarct is a stroke.

11.     Shortly after 1:00 a.m., on September 22, 2017, while Plaintiff Scotty J. Fuller was at Pushmataha Hospital in Antlers, Oklahoma, and because Pushmataha Hospital could not provide the care which Mr. Fuller needed, the physician at Pushmataha Hospital arranged for Mr. Fuller to be transferred to OU Medical Center in Oklahoma City, a distance of 181 miles, for further medical treatment.

12.     Plaintiff Scotty J. Fuller's physician at the Pushmataha Hospital in Antlers ordered and certified that Mr. Fuller's medical condition required air ambulance transportation from Pushmataha Hospital in Antlers to OU Medical Center in Oklahoma City on September 22, 2017, because Mr. Fuller's condition was too critical to allow for longer transport time by ground, Mr. Fuller required immediate and rapid transport because he was experiencing an ischemic stroke, and Mr. Fuller likely required immediate specialty care, including a neurosurgeon, neuroradiologist, and an ICU, none of which were available at Pushmataha Hospital in Antlers, Oklahoma.

13.     Pushmataha Hospital in Antlers made arrangements for the transfer of Mr. Fuller via air medical transport through Air Evac EMS Inc.

14.     Mr. Fuller, in the early morning hours of September 22, 2017, was then life-flighted from Pushmataha Hospital in Antlers to OU Medical Center in Oklahoma City,

   Oklahoma, where he was received at approximately 4:00 a.m. that morning.

15. Mr. Fuller was treated successfully at OU Medical Center for several days, and then released back to his home in Moyers, Oklahoma.

16. At all times heretofore mentioned, including on September 22, 2017, Plaintiff Scotty J. Fuller was insured through a contract of insurance (hereinafter "insurance policy") issued by Defendants, and/or each of them, said "insurance policy" bearing Member ID Number YUI800545438.

17. The "insurance policy" was an individual health insurance policy.

18. The "insurance policy" was in full force and effect on September 22, 2017.

19. Plaintiff had made all premium payments necessary for said "insurance policy" to be in effect on September 22, 2017.

20. As a result of the life flight from Pushmataha Hospital in Antlers to OU Medical Center in Oklahoma City, Plaintiff Scotty J. Fuller incurred a medical expense in the amount of $60,667.29, which expense was covered by the aforementioned insurance policy.

21. On November 3, 2017, Defendants, and/or each of them, decided to deny the claim for the air ambulance services, in their entirety.

22. In the November 7, 2017 Provider Summary sent by Defendants, and/or each of them, to Air Evac Lifeteam, the air ambulance transport company who provided the life flight medical care to Plaintiff on September 22, 2017, the stated reason for the denial was that "the medical policy review department has determined that the service provided is not covered based on corporate medical policy criteria."

23. In the claim process, Defendants, and/or each of them, were provided with documentation which showed that the air ambulance services were medically necessary, and that conditions warranted use of air ambulance services rather than ground ambulance services, including Plaintiff's medical records, the Statement of Medical Necessity and Reasonableness for Air Medical Transport which had been completed by the referring medical provider in Antlers, medical literature and references to applicable medical standards from the American Heart Association, all of which supported approval and payment of this expense as an EMTALA requested emergent and necessary transport by the referring provider.

24. In its processing of the claim for payment of the aforementioned medical expense, and ensuing appeal, Defendants, and/or each of them, did not interview Plaintiff's physician and office staff, Physician's eye doctor, or the EMS medical employees of the air medical transport flight service.

25. In its processing of the claim for payment of the aforementioned medical expense and ensuing appeal, Defendants, and/or each of them, made their decision based upon internal policies which were not a part of Plaintiff's contract with Defendants, and/or each of them.

26. In its processing of the claim for payment of this aforementioned medical expense, and ensuing appeal, Defendants, and/or each of them, did not adequately consider unbiased information from Plaintiff's treating providers, but rather relied upon the opinions of persons who were being paid by Defendants, and/or each of them.

27. The "insurance policy" did not contain adequate language concerning a referral rule or provision as to protocol when a medical referral, such as the one which occurred in this case, was medically necessary.

## FIRST CLAIM – BREACH OF CONTRACT

28. Paragraphs numbered 1-27 of this Amended Complaint are incorporated by reference herein.

29. Defendants, and/or each of them, were notified of the aforementioned occurrence of September 22, 2017, and a claim was made as specified under the aforementioned "insurance policy".

30. Defendants, and/or each of them, have failed to pay the aforementioned claim, despite being contractually obligated to do so.

31. As a result of Defendant's breach of contract, and/or each of them, in failing to pay the aforementioned claim, Plaintiff has suffered contractual damages in the amount of $60,667.29, and incurred attorney fees and court costs.

WHEREFORE, on his First Claim, Plaintiff prays for judgment against Defendants, and/or each of them, in the amount of $60,667.29, together with attorney fees, costs, interest, and such other relief to which Plaintiff may show himself to be entitled.

## SECOND CLAIM – BAD FAITH

32. Paragraphs numbered 1-31 of this Amended Complaint are incorporated by reference herein.

33. Plaintiff Scotty J. Fuller was covered under the aforementioned "insurance policy" and Defendants, and/or each of them, were required to take reasonable actions in handling Mr. Fuller's claim for payment of the medical expense owed to Air Evac EMS Inc. in the amount of $60,667.29, including reasonable actions in its investigation, evaluation, processing, and payment of said claim.

34. The actions and omissions of Defendants, and/or each of them, including those set

forth in paragraphs numbered 21 through 27 of this Amended Complaint, were unreasonable under the circumstances;

35. Defendants, and/or each of them, failed to deal fairly and act in good faith toward Scotty J. Fuller in their handling of the claim for payment of the Air Evac EMS Inc. medical expense in the amount of $60,667.29, including, but not limited to, the acts and omissions set forth in paragraphs numbered 21 through 27 and paragraph numbered 30 of this Amended Comlaint, and in the following manner:

    a. failing and refusing payment of the medical expense and other policy benefits on behalf of Plaintiff at a time when Defendants, and/or each of them, knew or should have known that Plaintiff was entitled to those benefits;

    b. failing to properly investigate Plaintiff's claim;

    c. failing to properly obtain and consider information provided by Plaintiff Scotty J. Fuller and his medical providers, including the attending physician at Pushmataha Hospital in Antlers, Oklahoma, and Air Evac EMS, Inc.,

    d. failing to obtain additional information both in connection with the original denial and following the receipt of additional information;

    e. treating Mr. Fuller like a third-party insurance claimant in disregarding unabiased medical information from his treating providers and, instead, relying solely on opinions of individuals who were being paid by Defendants, and/or each of them, to give those opinions;

    f. failing to given Scotty J. Fuller's interests faithful consideration;

    g. withholding payment of the benefits on behalf of Plaintiff, when they knew or should have known that Plaintiff's claims for those benefits were valid;

    h. refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy, namely the policy or policies referenced in their denials of the claim and ensuing appeal of the claim; and

    i. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims, all as per the allegations in paragraph number 27 of this Amended Complaint;

    all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to the Defendants, and/or each of them.

36. The breach or violation of the duty of good faith and fair dealing by Defendants, as

heretofore alleged, and/or each of them, was the direct cause of the damages sustained by its insured, Plaintiff Scotty J. Fuller, including anxiety, frustration, mental and emotional distress, physical discomfort, damage to Plaintiff Scotty J. Fuller's credit record and to his financial condition and reputation, all in an amount in excess of $75,000.00, for which damages are claimed herein.

37. Plaintiff Scotty J. Fuller complied with all conditions precedent for payment of the aforementioned claim, including payment of insurance premiums and cooperation with Defendants', and/or each of them, investigation, evaluation, and processing of the aforementioned claim.

38. The acts of Defendants, and/or each of them, herein were oppressive, intentional, malicious, willful, wanton, and/or with utter and reckless disregard for its duty to act in good faith and deal fairly with the Plaintiff, for which the Plaintiff is entitled to, and claims, general and punitive damages in an amount in excess of $75,000.00.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, and/or each of them, in an amount in excess of $75,000.00 for actual and punitive damages, together with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

### THIRD CLAIM - FRAUD, FALSE REPRESENTATION, CONCEALMENT AND DECEIT

39. Paragraphs numbered 1-38 of this Amended Complaint are incorporated by reference herein.

40. Defendants, and/or each of them, represented to Scotty J. Fuller on pages 32 and 33 of the "insurance policy", under the heading of "Ambulance Services" that they would cover and pay medically necessary air ambulance services where terrain, distance, Scotty J. Fuller's physical condition, or other circumstances required the use of air ambulance services rather than ground ambulance services.

41. Plaintiff Scotty J. Fuller reasonably relied upon this representation and purchased and maintained this insurance.

42. Defendants', and/or each of them, representation of healthcare coverage was intended to and did induce Plaintiff to purchase this insurance.

43. Defendants, and/or each of them, never intended to pay this coverage represented in the policy and had limitations and restrictions on this coverage which were concealed and withheld from Plaintiff, including the "medical policy" upon which Defendants apparently relied in denying the claim.

44. As a direct result of Defendants', and/or each of them, fraud, false representation,

      concealment and deceit, Plaintiff has suffered loss of policy benefits, anxiety, frustration, mental and emotional distress, physical discomfort, damage to Plaintiff Scotty J. Fuller's credit record and to his financial condition and reputation, all in an amount in excess of $75,000.00, for which damages are claimed herein.

45. Defendants', and/or each of them, actions were intentional, malicious and/or in reckless disregard of the rights of Plaintiff and others, and plaintiff is entitled to, and claims, punitive damages, all in an amount in excess of $75,000.00.

46. This Court has jurisdiction of this matter and venue is proper.

47. A redline version of the original "Petition" as amended is marked as Exhibit "A" and attached to this Amended Complaint as per the Order of August 8, 2022.

48. Plaintiff requests a jury trial on all matters so triable.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, and/or each of them in an amount in excess of $75,000.00, for actual damages and punitive damages. together with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

                                          /s/Tim Maxcey
                                          **TIM MAXCEY, OBA #13567**
                                          **STIPE LAW FIRM**
                                          **343 E. CARL ALBERT PKWY**
                                          **P.O. BOX 1369**
                                          **McALESTER, OK 74502**
                                          **(918) 423-0421 Phone**
                                          **(918) 423-0266 Fax**
                                          **ATTORNEY FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| **Dianna C. Wyrick** | dwyrick@reedsmith.com |
| **Martin J. Bishop** | **mbishop@ReedSmith.com** |
| **Robert C. Deegan** | **rdeegan@ReedSmith.com** |
| **Paige A. Masters** | **paige.masters@crowedunlevy.com** |

/s/ Tim Maxcey