### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SCOTTY J. FULLER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 22-CV-106-JWB** |
| | ) | |
| BLUE CROSS BLUE SHIELD OF | ) | |
| OKLAHOMA and HEALTH CARE | ) | |
| SERVICE CORPORATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Before the court is Defendant's motion to dismiss counts II and III of Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 25). Defendant requests the court enter judgment in its favor on Plaintiff's claims for breach of the duty of good faith and fair dealing and fraud. Plaintiff has filed a response opposing the motion (Doc. 26), and Defendant has filed a reply (Doc. 29). Defendant's motion is GRANTED for the reasons set forth herein.

### I. MOTION TO DISMISS STANDARD

To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) *citing Bell v. Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing on the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### II. BACKGROUND

The following facts from the first amended complaint are assumed true for purposes of the motion to dismiss. On September 17, 2017, Plaintiff experienced a severe headache. (First Amended Complaint, Doc. 18 ¶ 6). After visiting the eye doctor, Plaintiff was referred to his primary care physician, and then to the Pushmataha Hospital in Antlers, Oklahoma. *Id.* On September 21, 2017, at approximately 5:30 p.m., Plaintiff underwent a CT scan and went home to await the results. *Id.* ¶ 7. Later, around midnight on the evening of September 21, 2017, Plaintiff was notified the CT scan revealed he was having a stroke and that he needed to come to the hospital in Antlers immediately. *Id.* ¶ 8. Plaintiff's physician ordered and certified that Plaintiff's medical condition required immediate transfer via air medical transport from Antlers to The University of Oklahoma ("OU") Medical Center in Oklahoma City, a distance of approximately 180 miles. *Id.* ¶¶ 11-13. Plaintiff's physician believed Plaintiff required immediate specialty care, including a neurosurgeon, neuroradiologist, and an intensive care unit ("ICU"), none of which were available at the hospital in Antlers. *Id.* ¶ 12.

Plaintiff was life-flighted in the early morning hours of September 22, 2017, to the OU Medical Center. *Id.* ¶ 14. Plaintiff was treated successfully at OU Medical center and released several days later. *Id.* ¶ 15. As a result of the life flight from Antlers to Oklahoma City, Plaintiff incurred a medical expense in the amount of $60,667.29. *Id.* ¶ 20.

On November 3, 2017, Defendant denied the claim for the air ambulance services. *Id.* ¶ 21. The stated reason for the denial was that "the medical policy review department has determined that the service provided is not covered based on corporate medical policy criteria." *Id.* ¶ 22.

### III. ANALYSIS

#### A. Bad Faith

Defendant raises the argument that Plaintiff has failed to state a claim for bad faith. "[T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's

unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy...." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).  Defendant must also reasonably investigate Plaintiff's claim. "[W]hen presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances and the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000) (citations and internal quotations omitted).

Here, Plaintiff alleges Defendant has unjustifiably withheld payment for his air ambulance transfer and points to the allegations in his complaint. Defendant argues that Plaintiff's allegations are conclusory. The court agrees.  Specifically, Plaintiff contends Defendant failed to properly investigate his claim (Doc. 18 ¶ 35(b)). Plaintiff cites several instances to bolster this allegation including Defendant's failure to properly obtain and consider documentation which showed the air ambulance service was necessary. The documentation Plaintiff provided, but alleged was not considered by Defendant, included  Plaintiff's "medical records, the Statement of Medical Necessity and Reasonableness for Air Medical Transport which had been completed by the referring medical provider in Antlers, medical literature and references to applicable medical standards from the American Heart Association, all of which supported approval and payment of this expense as an EMTALA requested emergent and necessary transport by the referring provider." *Id*. ¶ 23.

Further, Plaintiff alleges that Defendant did not interview his physician, his eye doctor, or the medical employees of the air transport flight service. *Id.* ¶ 24.  Finally, Plaintiff asserts Defendant made the decision to deny his claim and appeal based on internal policies which were not a part of Plaintiff's policy. *Id*. ¶ 25.

The court previously rejected Plaintiff's bad faith claim because his allegations offered little "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Plaintiff was granted leave to file an amended complaint "providing additional legal and factual support vitiating Defendant's claims of insufficiency." (Doc. 16). Plaintiff filed an amended complaint on August 26, 2022. (Doc. 18). Plaintiff, however, has still not addressed the insufficiencies in his original complaint. For example, while Plaintiff alleges Defendant made its decision based upon internal policies which were not part of Plaintiff's contract, Plaintiff fails to identify what these alleged "internal policies" are, or how they relate to his bad faith claim besides stating that they were improperly applied. Similarly, in paragraph 26 of the amended complaint, Plaintiff alleges that Defendant did "not adequately consider unbiased information" in reviewing Plaintiffs medical claim, but Plaintiff fails to identify what "unbiased information" he is referring to. *Id*. ¶ 26. The rest of Plaintiff's bad faith allegations are essentially identical to those the court previously rejected as insufficient to "raise [his] right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The problem with Plaintiff's new allegations, as Defendant points out, is that they do no more than state a claim for breach of contract.[1] An insurer does not commit bad faith by refusing

---

[1] It may be that Plaintiff's difficulty in stating a claim for bad faith stems, at least in part, from the confusing manner in which this tort has been described in Oklahoma law. In *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583 (Okla. 1981), the Oklahoma Supreme Court addressed the nature and elements of a bad faith claim against an insurer. *Id.* at 587-88. Consistent with most other courts, the Oklahoma Supreme Court described the cause of action as a tort arising when an insurer fails to "deal fairly and act in good faith with its insured." *Id.* at 587. In a proper case, the insurer may be liable for punitive damages. *Id.* at 588. However, over twenty years later the Oklahoma Supreme Court appeared to criticize the language from *McCorkle*, choosing instead to depart from the name "bad faith" and instead revising the terminology to speak in terms of the "breach of the duty of good faith and fair dealing." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 n.6 (Okla. 2005). That effort at clarifying the cause of action may have done more harm than good. While it seems generally understood that the tort of bad faith addresses this lack of good faith and fairness between an insurer and its insured, long before *Badillo* it was common to observe that

to pay a claim or by litigating a dispute with its insured, so long as there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate. *Southern Hospitality, Inc. v. Zurich American Ins. Co.*, 393 F.3d 1137, 1142 (10th Cir. 2004.   Plaintiff has not pleaded sufficient facts to support an inference that Defendant acted unreasonably.

The court concludes the amended complaint does not contain sufficient factual allegations to "nudge[ ]" plaintiff's bad faith claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "[Our] pleading standard 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Jensen v. America's Wholesale Lender*, 425 Fed. Appx. 761, 764 (10th Cir. June 9, 2011 citing, *Iqbal*, 556 U.S. at 678-79.

## B.  Fraud

Under Oklahoma law, the elements of actual fraud are: (1) a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that a party would rely on it; and (4) reliance and resulting damage. *See Key Finance, Inc. v. Koon*, 371 P.3d 1133, 1137 (Okla. Civ. App. 2015) (citing *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009)).  Constructive fraud requires largely the same elements, but "does not necessarily involve any moral guilt, intent

---

contracts often contained an implied *covenant* of good faith and fair dealing; however, the breach of that obligation was not a tort, but rather a breach of contract for which punitive damages were not ordinarily available. *See H&C Animal Health, LLC v. Ceva Animal Health, LLC*, 499 F. Supp. 3d 920, 940 (D. Kan. 2020).  Sticking with "bad faith" in the insurance context seemed to help avoid confusing the insurance tort with an ordinary breach of contract for breaching the covenant of good faith and fair dealing.  It appears that perhaps *Badillo* may have complicated things with its switch in terminology.  As an example in this case, the court notes that in his amended complaint, Plaintiff conflates those terms, speaking in terms of "bad faith," (Doc. 18 Count II heading); "the *covenant* of good faith and fair dealing," (*id.* ¶ 35 (covenant being a purely contractual term)); and "the duty of good faith and fair dealing", (*id.* ¶ 36 (the apparently hybridized term adopted in *Badillo*).  In any event, the court declines to speak in terms of a duty (or a covenant) of good faith and fair dealing in the insurance context, using instead the traditional term "bad faith" in order to avoid the confusion described herein.

to deceive, or actual dishonesty of purpose." *See id.* at 1138 (citing *Faulkenberry v. Kansas City Southern Railway Co.*, 602 P.2d 203, 206 (Okla. 1979)).   Federal Rule of Civil Procedure 9(b) requires fraud to be pleaded with particularity. "[A] complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.' *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotation marks and citation omitted) (quoting *Lawrence Nat'l Bank v Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991).

Defendant claims Plaintiff has failed to provide any facts showing that Defendant intentionally or recklessly made a false representation. (Doc. 25 at 19). Further, Defendant contends Plaintiff's fraud claim fails because it is based on the same facts as his breach of contract claim. *Id.* at 21.

 In order to establish a claim for fraud the claim must be distinct from a claim for breach of contract. See *Terry v. Health Care Service Corporation*, 344 F. Supp. 3d 1314, 1323 (W.D. Okla. 2018).  In general, "the wrong giving rise to a tort claim must be independent of the breach of contract." *KT Specialty Distrib., LLC v. Xlibris Corp.*, 2008 WL 4279620 at *4 (N.D. Okla. Sept. 11, 2008).  Two factors are important in this consideration: (1) whether the facts supporting each claim are different, and  (2) whether the damages arising as a result of each claim are distinct from one another. *Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072, 1086 (E.D. Okla. 2020).

Plaintiff argues his fraud claim is distinct and alleges facts which support each of these elements.  Plaintiff alleges his insurance policy reflects Defendant "would cover and pay medically necessary air ambulance services where terrain, distance, Plaintiff's physical condition, or other circumstances required the use of air ambulance services rather than ground ambulance services." (Plaintiff's response at 10, citing Doc. 18 ¶40). With regard to the second element, Plaintiff alleges

"Defendant never intended to pay that coverage and that Defendant concealed and withheld limitations and restrictions on that coverage from Plaintiff." *Id*. citing Doc. 18 ¶ 43. Plaintiff contends the third element is satisfied because the Defendant's representations concerning healthcare coverage "were intended to induce, and did induce, Plaintiff's reliance, which was the purchase of the insurance from Defendant." *Id*. citing Doc 18 ¶ 42. Finally, Plaintiff contends the fourth element is satisfied by ¶¶41 and 44 of the First Amended Complaint, "which allege that Plaintiff relied on the representations concerning this coverage, purchased the insurance, and suffered damages as a result." *Id*. citing Doc. 18 ¶¶ 41 and 44.

Therefore, Plaintiff argues the facts supporting the fraud claim and the breach of contract claim are independent of each other. "The fraud claim relies upon a false promise of coverage and Defendant's intent in making this promise. The contract claim is not concerned with intent and Defendant's intent would have no relevance." (Plaintiff's response, Doc. 26 at 11). Additionally, the damages for each cause of action are different.

As a threshold issue, this court finds that Plaintiff has not pled his claim with sufficient particularity and met the requirements of Rule 9(b). Further, construing the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has not cited distinct, independent conduct to properly plead a fraud claim. Moreover, to the extent Plaintiff has pled facts, conclusory though they are, they are also hopelessly contradictory. Plaintiff argues, and his amended complaint alleges, that Defendant never intended to cover air ambulance services such that the language in the policy describing coverage for such services was false when it was made. (*See* Doc. 18 ¶ 43.) In direct contravention of that assertion, the amended complaint unequivocally asserts that Defendant decided to deny coverage for the air ambulance services at issue here on November 3, 2017. (*Id*. ¶ 21.) Defendant could not possibly have decided to deny coverage on November 3,

2017, if it had already decided to deny coverage when it entered into the policy with Plaintiff weeks or months earlier.  (*See id.* ¶¶ 16-19 (alleging that the policy was in full force and effect before the events giving rise to this lawsuit began).)

Based on the foregoing, Defendant's motion to dismiss Plaintiff's fraud claim is granted.

!

### IV. CONCLUSION

It appears in this case that Plaintiff is trying to put the cart before the horse.  He is determined to assert claims that would move beyond simple breach of contract and instead expose Defendant to the risk of punitive damages.  However, under the facts of this case, these are claims that can probably only be asserted after discovery reveals facts that support such claims.  Rather than trying to ram these claims in with conclusory allegations, a party is better served to conduct discovery and then seek to add such claims later if discovery actually reveals a factual basis for the claims.

For the foregoing reasons, Defendant's motion to dismiss (Doc. 25) is GRANTED.  As a result of this ruling, it appears that the remaining claim may no longer satisfy the jurisdictional amount to support federal subject matter jurisdiction in this diversity action.  Accordingly, all parties are directed to SHOW CAUSE by November 15, 2023, why this case should not be remanded to state court for lack of jurisdiction.

**IT IS SO ORDERED this 8th day of November, 2023.**

_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE